DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Thomas Mroczkowski, appeals from his conviction upon a guilty plea to a single count of disorderly conduct. For the reasons that follow, the judgment of the trial court is reversed.
 {¶ 2} On the morning of May 17, 2002, Toledo police were dispatched to Lagrange and Manhattan to meet with appellant's brother, Ken Mroczkowski, in response to Ken's call to 911. Upon their arrival, Ken told the officers that his brother Tom — the appellant herein — was sitting at his front door with a cocked long gun. Ken also informed the officers that Tom had been, and was currently being, treated for mental illness, and that Tom had threatened to kill him if he called the police. Ken further stated that he feared for his life because he had called the police.
 {¶ 3} On the basis of Ken's statements, police dispatched several crews to the area. At approximately 8:21 a.m., Lieutenant Shirley Green and other units responded to the scene. Appellant refused to come out, and he prevented his mother from doing so, as well. Because of this refusal, a command post was established, numerous officers from various units were dispatched to the scene, Manhattan Boulevard was closed, and residents were warned to stay in the rear of their homes. At approximately 10:00 a.m., appellant's mother was removed from the residence when she appeared at the front door. Appellant surrendered soon after. Officers then entered the residence and removed, inter alia, $30,000 worth of weapons and ammunition.
 {¶ 4} That same day, Ken signed a statement of domestic violence, wherein he stated that appellant had threatened to kill him. Appellant was subsequently charged with domestic violence, a misdemeanor of the fourth degree, pursuant to Toledo Municipal Code 537.19(c).
 {¶ 5} At some point during the pendency of the domestic violence case, Ken changed his story and indicated that appellant had not done what Ken had originally said he did.[1] As a result of this recantation, the domestic violence charge was dismissed, and the property that had been seized on May 17, 2002 was returned to appellant.
 {¶ 6} On August 2, 2002, Lieutenant Green filed a complaint alleging that appellant, by his actions of May 17, 2002, had induced panic, in violation of Toledo Municipal Code 509.06(a)(2)(3), a misdemeanor of the first degree. A search warrant was issued and the property that had been seized from appellant's residence on May 17, 2002 was seized once again.
 {¶ 7} On August 7, 2003, appellant entered a plea of no contest to an amended charge of disorderly conduct, pursuant to Toledo Municipal Code 509.03, a misdemeanor of the fourth degree. Under the attendant plea agreement, appellant agreed to forfeit all of the seized property to the city, for sale by the city. The city, in turn, was to sell the property in good faith, and with the cooperation of appellant, and was to remit to appellant any proceeds of the sale, minus the costs of the sale. The agreement further provided that the sale would only be made through a licensed firearms dealer, that none of the weapons were to be sold to a family member or friend of appellant, and that any items that could not be sold would be destroyed by the Toledo Police Department.
 {¶ 8} Appellant now appeals the judgment of conviction and the accompanying plea agreement, setting forth the following assignments of error:
 {¶ 9} I. "DEFENDANT/APPELLANT'S NO CONTEST PLEA WAS UNLAWFULLY COERCED VIA UNLAWFUL PRESSURE FROM THE STATE OF OHIO (THREAT OF FORFEITURE OF LEGALLY-OWNED PROPERTY), WAS THE PRODUCT OF A MISLEADING `AGREEMENT' WHICH HE NEITHER SIGNED, UNDERSTOOD, NOR MEANINGFULLY REVIEWED, AND WAS OTHERWISE NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTERED INTO."
 {¶ 10} II. "THE FORFEITURE OF APPROXIMATELY $30,000 OF LAWFULLY OWNED, NON-CONTRABAND PROPERTY FOR A DISORDERLY CONDUCT OFFENSE IS GROSSLY DISPROPORTIONATE PUNISHMENT AND IS CONSTITUTIONALLY IMPERMISSIBLE."
 {¶ 11} III. "THE FAILURE OF THE TRIAL COURT TO ADVISE DEFENDANT/APPELLANT OF HIS RIGHT TO APPEAL, OR ENGAGE IN ANY COLLOQUY WHATSOEVER REGARDING THE TERMS OF HIS PLEA OR CONSEQUENCES OF HIS SENTENCING WAS REVERSIBLE ERROR."
 {¶ 12} IV. "IT WAS INEFFECTIVE ASSISTANCE OF COUNSEL TO ADVISE DEFENDANT/APPELLANT TO AGREE TO THE UNCLEAR AND UNSPECIFIED TERMS OF A MISDEMEANOR PLEA BARGAIN WHERE $30,000 OF LAWFULLY OWNED, NON-CONTRABAND PROPERTY WOULD ULTIMATELY BE FORFEITED TO THE STATE, SINCE STATE FORFEITURE STATUTES CLEARLY PROHIBIT THE STATE FROM OBTAINING SUCH PROPERTY VIA FORFEITURE PROCEEDINGS IN MISDEMEANOR CASES."
 {¶ 13} V. "IT WAS INEFFECTIVE ASSISTANCE OF COUNSEL NOT TO CHALLENGE THE SEARCH AND ARREST WARRANTS ISSUED, WHERE THERE WAS NO BASIS TO BELIEVE PROBABLE CAUSE EXISTED TO BELIEVE DEFENDANT/APPELLANT COMMITTED A CRIME, OR HAD HIDDEN OR POSSESSED EVIDENCE THAT A CRIME HAD BEEN COMMITTED."
 {¶ 14} We will begin by examining relevant portions of appellant's first and third assignments of error. Appellant asserts in support of his first assignment of error that his plea was not knowingly, voluntarily, and intelligently entered into, because the trial court failed to advise him of his rights. He reasserts this claim in his third assignment of error, wherein he states that the trial court erred in failing to engage him in a colloquy regarding the terms of his plea.
 {¶ 15} In this case, the disorderly conduct offense with which appellant was charged was a fourth degree misdemeanor, punishable by a maximum of 30 days confinement. Thus, it was a petty offense. See Crim.R. 2(D), (E). Before a trial court may accept a plea of no contest to a petty offense, it must comply with the provisions of Crim.R. 11(E). Crim.R. 11(E) relevantly provides:
 {¶ 16} "In misdemeanor cases involving petty offenses, the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, or not guilty."
 {¶ 17} Crim.R. 11(B)(2) sets forth the effect of a no contest plea:
 {¶ 18} "The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."
 {¶ 19} In this case, the transcripts reveal that the trial court made no attempt whatsoever to inform appellant of the effect of his no contest plea. Such failure was in clear violation of Crim.R. 11(E), and constitutes reversible error. Accordingly, appellant's first and third assignments of error are well-taken.
 {¶ 20} Next, we will review appellant's second assignment of error, wherein he challenges the substance of his forfeiture agreement with the city. Specifically, appellant argues that the agreement is invalid by its terms because the required forfeiture of all of the seized property amounts to a disproportionate punishment for the offense with which he was charged.
 {¶ 21} In our opinion, appellant mischaracterizes the agreed-upon forfeiture of property as "punishment." In fact, it is simply part of a negotiated plea agreement.
 {¶ 22} The law is clear that a court may properly declare as forfeited any property that is surrendered pursuant to a valid plea agreement. SeeState v. Whitmore (2005), 162 Ohio App.3d 659, 661. As stated by the Ohio Court of Appeals in State v. Hensley, 9th Dist. No. 03-CA-008356, 2004-Ohio-2664, "Where a defendant enters into a plea agreement, and clearly has notice of and agreed to forfeiture of his property, the procedural requirements under R.C. 2933.43 need not be followed in order to comport with due process. Because relinquishment of the ownership of property in such a case is effectuated by a plea agreement, and not under statutory provisions governing forfeiture, adherence to statutory forfeiture procedure is unnecessary." (Citations omitted.) Id., at ¶ 7. Regarding specific facts and circumstances sufficient to satisfy the notice and agreement requirements of a forfeiture pursuant to a plea agreement, this court has recently stated: "When there is a plea agreement signed by the defendant, enumerating specifically what property the defendant is forfeiting and why, with an acknowledgment by the defendant that he understands the agreement, the statutory requirements may be abandoned." See State v. Whitmore, supra.
 {¶ 23} Here, there is no question but that appellant's agreement with the city would have been appropriate had there been clear evidence that appellant knew of and agreed to the forfeiture. Such evidence does not exist, however. The record is void of any plea agreement signed by appellant. (The written agreement that is contained in the record is signed by appellant's attorney.) There is also a lack of evidence showing that appellant either understood the agreement or assented to it. Although appellant was present in court, with counsel, on the date that the agreement was read into the record, the transcript reveals that the court addressed only counsel, and never appellant himself. In the absence of evidence showing that appellant, himself, understood and agreed to the forfeiture, we are compelled to conclude that the forfeiture agreement is invalid. Accordingly, we find appellant's second assignment of error well-taken.
 {¶ 24} In light of our determinations with respect to the Assignment of Error Nos. I, II, and III, we find Assignment of Error Nos. IV and V to be moot.
 {¶ 25} For all of the foregoing reasons, the judgment of the Toledo Municipal Court is reversed and remanded. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Skow, J. Parish, J., concur.
[1] According to appellant, on the morning of May 17, 2002, he was merely showing his mother how an M1 Garand Rifle operates, when his 51 year old mentally challenged and "hoplophobic" brother walked in, became hysterical, and proceeded to file a false police report.