[Cite as *State v. Taylor*, 2013-Ohio-1300.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                  CASE NO. 13-12-35

     v.

LEWIS M. TAYLOR,                     **O P I N I O N**

     DEFENDANT-APPELLANT.

Appeal from Tiffin Municipal Court
Trial Court No. CRB 1200685

Judgment Reversed and Cause Remanded

Date of Decision: April 1, 2013

APPEARANCES:

    *Kent D. Nord* for Appellant

    *Richard A. Palau and Drew E. Wood* for Appellee

**WILLAMOWSKI, J**.

{¶1} Although originally placed on our accelerated calendar, we elect, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.

{¶2} Defendant-Appellant, Lewis M. Taylor ("Taylor"), appeals the judgment of the Municipal Court of Tiffin, Seneca County, finding him guilty of domestic violence after a bench trial. On appeal, Taylor contends that the trial court erred when it failed to find him indigent and appoint counsel as requested; when it ordered him held without bond; that the conviction should be reversed because there was insufficient evidence to support the conviction; and, the decision was against the manifest weight of the evidence. For the reasons set forth below, the judgment is reversed and remanded.

{¶3} Taylor was charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The charge was the result of an altercation on August 4, 2012, between Taylor and his girlfriend, Neely Phillips ("Phillips"), who is the mother of his child. Taylor and Phillips got in an argument involving a cell phone. Phillips claimed that Taylor put his arm around her neck to try to get the phone away from her. (Trial Tr. 7-10) She acknowledged that she bit him to try to get him to let her go, but then she claimed that Taylor hit her in the face. (*Id*.) Taylor alleged that Phillips was the aggressor and that she took his cell phone and that she bit him when he tried to get it back.

(Ex. B, Vol. Stmt. to Police)  The police were called and the responding officers took statements from both parties.  The police reports and photos indicated that Taylor had a bite mark on his inside forearm and that the left side of Phillip's face was swollen and red.

{¶4} The officers took Taylor to the police station, where they learned that he had active warrants from another county for felony theft.[1]  (Tr. 26)  Taylor was then placed under arrest.

{¶5} The arraignment was held on August 6, 2012, via a group video-conference with four defendants at the Seneca County Jail.  (Arraignment Tr. 2)  The trial court addressed the group all together, explaining the basic procedures that would occur during the arraignment.  The trial court explained that when a defendant's name is called, the defendant will be asked how he/she wishes to proceed, and explained the various plea options available (guilty, not guilty, no contest) and what they meant.  The court explained that if a defendant pleads guilty or no contest, the trial court would dispose of the case immediately; if a defendant pleads not guilty, his/her case "will be scheduled for a trial at a later date which is convenient for both you and for the prosecutor."  (*Id.* at 4)

{¶6} The trial court further told the entire group:

> Now, before you enter a plea you should be informed you have a
> right to hire an attorney, even if you intend to plead guilty or no

---

[1] The pending charges were for theft in Butler County; Taylor claimed he did not know anything about them.  (Tr. 39)  There was no other information concerning these warrants.

> contest at a later time. And you have a right to a reasonable continuance of this arraignment here today in order to speak with and hire an attorney.
>
> In any case in which you could be imprisoned, you have a right to have an attorney assigned to represent you if you can demonstrate that you cannot afford to hire one.

(*Id.*) The trial court also informed the defendants that they had the right to remain silent; they had the right to a trial by a jury; and, if convicted of a traffic violation, the conviction would be sent to the Ohio Bureau of Motor Vehicles.

{¶7} Taylor was the first defendant to be arraigned. The city prosecutor read the charge in the complaint and stated that the violation of R.C. 2919.25(A), domestic violence, was a misdemeanor of the first degree, which carried with it a maximum penalty of up to six months incarceration, a fine of up to $1,000, a permanent mandatory weapons disability, and that a subsequent conviction for domestic violence is enhanceable to the felony level. Taylor indicated that he had received a copy of the complaint and understood the charges, penalties, and plea options. (Tr. 7)

> THE COURT: What would you like to do? Do you wish to enter a plea or do you wish for a short continuance in order to speak with an attorney?
>
> MR. TAYLOR: Uhm, how – how long is a short continuance exactly?
>
> THE COURT: A week.
>
> MR. TAYLOR: I'll just go ahead and plead not guilty.

THE COURT: I'll accept your plea of not guilty. I'm gonna direct that this matter be set for trial within 90 days of today's date.

(*Id.* at 8)

{¶8} The State then presented its position on bond, requesting bond in the amount of $10,000 and a condition of no contact with the victim. Because of Taylor's prior convictions, probation violations, the outstanding warrant, and because the trial court had a "bad feeling" about the matter, it decided to remand him to custody with no bond, pending trial.[2] (*Id.* at 10) The trial court then stated, "Thank you. Good luck. We'll see you in a few weeks." (*Id.*)

{¶9} The court set the trial date for August 16, 2012, ten days from the arraignment date.[3] On the morning of the trial, the State and all of its witnesses were present and ready to proceed. When the trial court asked Taylor if he was ready, the following exchange occurred.

THE COURT: Mr. Taylor?

MR. TAYLOR: No, your Honor.

THE COURT: No? Any reason why not?

MR. TAYLOR: I guess I misunderstood you last week at my initial hearing about counsel. Uhm, I heard – I heard you state continuance. I did not understand that meant that, I would like –

---

[2] The trial court also decided to continue the Crim.R. 4 matter on the outstanding warrants until this case was resolved. (Tr. 10) The court stated "I don't want to give him up until we get our case taken care of."

[3] There is no definitive information in the record as to when, or if, Taylor was informed as to the trial date. A "Notice of Hearing" setting the trial date was filed on August 6th by the Clerk of Court Assignment Commissioner. There was no "proof of service" included in the notice, just a "cc" to "Defendant" and "Prosecutor." Taylor and Phillip's home address was on the document.

THE COURT: Well, I entered a not guilty plea and we ordered it be set for trial and here we are because you're in custody.

MR. TAYLOR: Yes, sir. And I wasn't aware that for – for me to get counsel. I realized I didn't have counsel after I got back.

THE COURT: Mr. Taylor, I don't just hand them out. You gotta ask me for them.

MR. TAYLOR: I – I – I –

THE COURT: If you want an attorney and you don't have the means, which I'm assuming you're trying to kind of allude to, I mean, I don't know how I'm supposed to figure that out.

MR. TAYLOR: No, I do not have the means. I --

(Trial Tr. 4-5) The trial court then noted that everyone was present and ready to proceed and that the police officers were there at taxpayer expense.

THE COURT: Mr. Taylor, this is what I'm going to do. I'm gonna give you a few minutes to talk to the prosecutor. If you come on up with something you can agree on, great. Otherwise, I believe that we're going to proceed.

(Tr. 5)

{¶10} The trial court then continued the trial for a few minutes to allow Taylor and the prosecutor to try to reach an agreement. Soon thereafter, the trial court was informed that no agreement had been reached and they proceeded to trial, with Taylor acting as his own attorney. (*Id.*)

{¶11} The State offered the testimony of Phillips and the two police officers who responded that evening, as well as five photographs of Phillips

(showing a swollen area on her side jaw) and one of Taylor's arm (showing a bite mark on the inside of his forearm). Taylor asked a few questions of the witnesses on cross-examination. He also called Phillips back to the stand when it was his turn to present his case, as well as a witness who was present that evening (although the witness claimed he "did not remember" what happened that night, and offered no definitive testimony).

{¶12} The trial court found Taylor guilty and sentenced him to 180 days in jail, with 120 conditionally suspended. He was also placed on two years' probation and ordered to pay a $150 fine, plus costs, and have no contact with Phillips.

{¶13} On August 30, 2012, Taylor sent a hand-written letter from the Seneca County Jail to the Clerk of Courts, stating he would like to appeal his conviction and he would like to have appointed counsel since he was incarcerated and indigent. The letter was accepted as his notice of appeal, and Taylor was subsequently assigned court-appointed counsel. Taylor's counsel filed a formal notice of appeal, as well as the other required paperwork, along with a Motion to Stay Further Execution of Sentence (noting that Taylor had already served forty-seven days in jail.) This Court denied the motion on October 12, 2012, for failure to comply with App.R. 8(B) and Loc.R. 16(A) because the motion did not reflect that it had been first filed in the trial court, and it was not accompanied by copy of

a trial court judgment denying the request for a stay. Furthermore, Taylor's 60 days of incarceration would have been completed before this Court had the opportunity to file its judgment on this motion.

{¶14} Taylor now appeals his conviction, raising the following three assignments of error for our review.

### First Assignment of Error

**The trial court erred when it failed to qualify [Taylor] for indigency and to appoint counsel for him.**

### Second Assignment of Error

**The conviction in the trial court should be reversed because it is against the manifest weight of the evidence and because the evidence supporting it was insufficient as a matter of law.**

### Third Assignment of Error

**The trial court erred when it held [Taylor] without bond.**

{¶15} In the first assignment of error, Taylor claims that the trial court erred when it forced him to go to trial without being represented by an attorney and when it denied his request to have counsel appointed because he was indigent. The State counters that the trial court could "infer" Taylor's waiver of counsel, and that a defendant may not take advantage of the trial court by claiming his right to counsel on the day of trial in order to frustrate or delay the judicial process.

{¶16} The Sixth Amendment to the United States Constitution, and Section 10, Article 1 of the Ohio Constitution guarantee the right to assistance of counsel

in all criminal prosecutions that may result in jail sentences. *State v. Wellman*, 37 Ohio St.2d 162, 171 (1974), citing *Argersinger v. Hamlin*, 407 U.S. 25 (1972). "The constitutionally protected right to the assistance of counsel is absolute [and] absent a knowing and intelligent waiver, no person may be imprisoned for any offense * * * unless he was represented by counsel at his trial." *State v. Tymcio*, 42 Ohio St.2d 39, 43 (1975), citing *Argersinger* at 37 and *Gideon v. Wainwright*, 372 U.S. 335 (1963). Although a criminal defendant may waive the right to counsel, the court must be satisfied that the defendant made an intelligent and voluntary waiver of the right with the knowledge that he will have to represent himself. *State v. Ebersole*, 107 Ohio App.3d 288, 293 (3d Dist. 1995), citing *Faretta v. California*, 422 U.S. 806 (1975); *State v. Gibson*, 45 Ohio St.2d 366 (1976).

{¶17} Furthermore, Crim.R. 44, which covers the assignment of counsel and waiver of counsel, provides: "Where a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel."[4] Crim.R. 44(B). The rule further provides that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22." Crim.R. 44(C).

---

[4] Crim.R. 2(C) defines "serious offense" as "any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months," while Crim.R. 2(D) defines "petty offense" as "a misdemeanor other than a serious offense." In the case at bar, the charge against appellant was a "petty" offense.

{¶18} To be valid, a waiver of the right to counsel must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *State v. Martin*, 103 Ohio St.3d 385, 2004–Ohio–5471, ¶ 40, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723 (1948); *State v. Suber*, 154 Ohio App.3d 681, 2003–Ohio–5210, ¶ 15 (10th Dist.). In order for the defendant to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *State v. Clemons*, 3d Dist. No. 4-11-23, 2012-Ohio-2127, ¶ 3, quoting *Faretta*, 422 U.S. at 835.

{¶19} In Taylor's case, there was no pre-trial inquiry made to determine whether he understood the ramifications of proceeding pro se and the possible consequences thereof. In fact, there was not even a definitive question asked to verify that Taylor wanted to proceed to represent himself throughout all of the proceedings and at trial. The trial court only asked if he wanted to have a short continuance to obtain counsel for the arraignment. The trial court then inferred a complete waiver of counsel, without verifying Taylor's intent, or providing him with any required warning or admonition.

**{¶20}** It is true that wavier of the right to counsel can be express or implied. *State v. Glasure*, 132 Ohio App.3d 227, 234 (7th Dist. 1999). However, courts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel. *State v. Dyer*, 117 Ohio App.3d 92, 95-96 (2d Dist. 1996), citing *Brewer v. Williams*, 430 U.S. 387 (1997). The state bears the burden of overcoming presumptions against a valid waiver. *Id.*

**{¶21}** The trial court's brief *mention* of the fact that Taylor was entitled to have counsel did not constitute a valid waiver. There was nothing in the record to indicate that Taylor was competently and intelligently choosing self-representation, or that he was made aware of the dangers and disadvantages of self-representation.

**{¶22}** And, nothing in Taylor's subsequent behavior after the arraignment could be construed as a waiver of his right to counsel. The State relies upon the Tenth District Court of Appeal's decision in *State v. Hook*, and a handful of other cases, to attempt to justify the trial court's denial of Taylor's request for a continuance in order to obtain counsel. *See Hook*, 33 Ohio App.3d 101, 103 (10th Dist. 1986). However, *Hook* and the other cases cited by the State are completely distinguishable and not on point in that the defendants usually had had a lengthy period of time to obtain counsel but purposely waited until the last minute to seek

a continuance; the trial court usually had already granted at least one or more previous continuances; the defendants repeatedly had been given detailed warnings about the risks of proceeding without counsel; the defendants usually were not incarcerated, so they had the ability to obtain counsel unhindered; often the defendants were not indigent and had the means to hire counsel; and, in many cases, the defendants had affirmatively waived representation by counsel on the record, and then they changed their mind at the last minute, often for purposes of delay.

{¶23} The defendant in *Hook* had been found guilty of operating a gambling house and gambling, but that conviction was overturned and a new trial granted. *Id.* On the date of new trial, Hook asked for a continuance to obtain counsel. The court noted that the defendant was familiar with the justice system, the matter had previously been tried, and he had had adequate time (two and one-half months when he was not incarcerated) to obtain counsel, but failed to do so.

{¶24} In *State v. Jackson*, 10th Dist. No. 89AP-1344, (Sept. 4, 1990), 1990 WL 129284, the defendant released his court-appointed attorney and said he would retain private counsel. The court noted that: "Defendant was provided with appointed counsel, but chose instead to seek private representation. He was given a reasonable time, two months, to obtain private counsel or request reappointment of public counsel, yet he failed to do so." *Id.* In this case, Taylor was never given

court-appointed council, he did not voluntarily release his counsel, and he did not have two-months to try to obtain representation.

{¶25} The Ninth District Court of Appeals also affirmed a trial court's denial of a continuance to obtain counsel, but again, the facts are completely distinguishable. *See State v. Crebs*, 42 Ohio App.3d 50 (9th Dist. 1987). In *Crebs*, the record indicated that the defendant had more than a month from the time he was first summoned to court until the scheduled date of trial to secure counsel; he had the responsibility for retaining counsel of his choice in time to meet the scheduled trial date; he had already sought and been granted one continuance for the purpose of seeking counsel; and, he then returned to court without being represented by counsel. *Id.*

{¶26} In another case relied upon by the State, *Loudonville v. McClure*, 5th Dist. No. CA-952, (June 8, 1990), 1990 WL 84169, the defendant was also charged with domestic violence. However, the one paragraph decision concerning this issue in the twenty-year old, Fifth District case did not provide sufficient information concerning the facts to determine whether this decision was in any way relevant. There was no information whatsoever as to what the defendant had been told concerning his right to counsel, whether he had previously waived his right to counsel, what opportunity he had had to obtain counsel (although it would appear that the defendant was not incarcerated, since he received a suspended

sentence), or why the court might have thought the request for counsel on the day of the day of trial was for purposes of delay. The Fifth District Court of Appeals stated that it overruled the assignment of error "[u]pon the authority of *Crebs*, as well as *State v. Holmes* (1987), 36 Ohio App.3d 44 and *State v. Unger* (1981), 67 Ohio St.2d 65." However, as noted above, *Crebs* had already had at least one other continuance to obtain counsel and the issues concerning the requests for continuances in *Holmes* and *Unger* had nothing to do with representation by counsel, but merely discussed a trial court's discretion to grant a continuance.

{¶27} In *State v. Kitsemble*, 3d Dist. No. 10-98-05 (Sept. 30, 1998), 1998 WL 682253, this Court found that a defendant had waived his right to counsel by failing to obtain counsel, but only after the trial court had granted one continuance after another, over a period of over eight months. The trial court repeatedly warned the defendant of the dangers of not having legal representation and urged him to find an attorney. *Id.* The defendant first asked for a continuance to obtain counsel and represented that he could afford to hire his own attorney; then he showed up for several hearings insisting that he wanted to represent himself; then he inquired about the paperwork to obtain a court-appointed attorney; then he claimed he had retained two attorneys, but it turned out that they were not licensed to practice in Ohio; and then he stated he wanted counsel but couldn't find any that would properly protect his rights. The trial court finally indicated that it could

not delay trial any longer and would not grant another continuance, although it did grant a recess to give him one more opportunity to call an attorney. *Id.* While this court found that the defendant had waived his right to obtain counsel, it was only after a lengthy process of being sure that he understood the dangers of not obtaining counsel, and giving him every opportunity possible to retain counsel.

{¶28} The facts and circumstances in these cases, where waiver was implied, bear no resemblance to the facts in this case. Although the trial court did perfunctorily tell Taylor that he was entitled to have an attorney, it never discussed the dangers or consequences of failing to obtain representation with him, nor did the trial court follow any of the procedures required by Crim.R. 44 and Crim.R. 22. The trial court never obtained a waiver of counsel from Taylor, either written or oral.

{¶29} In fact, the trial court never specifically asked Taylor if he intended to seek representation for trial. Taylor was asked whether he wished to enter a plea, or, if he wanted to have "a short continuance in order to speak with an attorney." Taylor did have prior criminal convictions, so it might be understandable that he felt he could enter a "not guilty" plea without the need for a continuance or representation by counsel. The transcript establishes that this is all he did at that time. There was nothing in the record that would alert Taylor to the fact that if he decided to enter a plea without requesting a continuance *for the*

*arraignment*, that he would be waiving his only opportunity to be represented by counsel at trial.   When he made that decision, Taylor did not know that the trial would be held within ten days, and he did not know that he would be held without bond, impeding his ability to try to make arrangements to obtain counsel.

{¶30} On the morning of the trial, Taylor tried to explain to the trial court that he had "misunderstood" at the initial hearing about counsel. (Tr. 4)  This was the first continuance requested, it had only been ten days since the arraignment, and there was no evidence or indication in the record that Taylor made his request for counsel for purposes of delay.  The State had the burden to prove that Taylor had affirmatively waived counsel and it did not meet that burden.  The trial court's own journal entry form asks the trial court to indicate whether the defendant appeared at the arraignment (1) "with an attorney," or if (2) defendant had "waived counsel," and, if so, whether it was "in writing" and/or "following discussion."  (Aug. 16, 2012 J.E.)  *None* of the choices were checked for Taylor because he did not appear with an attorney, *and he did not waive counsel*, *either in writing or following discussion* with the trial court.  (*Id.*)

{¶31} The State also argues that it is within a trial court's "discretion" to determine its schedule and to decide whether or not to grant continuances.  While that is true, a trial court's discretion to control its docket does not usurp a defendant's fundamental constitutional right to be represented by counsel, where

the defendant is entitled by law to representation by counsel. *See* Crim.R. 44. Because the trial court denied Taylor this constitutional right, the first assignment of error is sustained. Having sustained the first assignment of error, the second and third assignments of error are moot and are therefore overruled.

{¶32} Having found error prejudicial to the Appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS and SHAW, J.J., concur.**

**/jlr**