[Cite as *State v. Lawson*, 2018-Ohio-4922.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,           CASE NO.  13-18-20

      v.

WILLIAM F. LAWSON,           O P I N I O N

      DEFENDANT-APPELLANT.

---

**Appeal from Tiffin-Fostoria Municipal Court**
**Trial Court No. CRB 1800664**

**Judgment Reversed and Cause Remanded**

**Date of Decision:   December 10, 2018**

---

APPEARANCES:

    *Jennifer L. Kahler* **for Appellant**

    *Richard H. Palau* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, William Lawson ("Lawson"), brings this appeal from the June 15, 2018, judgment of the Tiffin-Fostoria Municipal Court sentencing him to 180 days in jail, with 120 suspended, after Lawson pled no contest to, and was convicted of, Theft in violation of R.C. 2913.02(A)(1), a first degree misdemeanor. On appeal, Lawson argues that his right to counsel was denied, that he was essentially coerced into making his plea, rendering it involuntary, and that he was denied due process.

*Procedural History*

{¶2} On May 30, 2018, Lawson was charged with Theft in violation of R.C. 2913.02(A)(1), a first degree misdemeanor. It was alleged that Lawson took a woman's cell phone that had been left in a cart at Walmart, where he worked, that he put the phone into his pocket, and then gave it to a friend. The incident was recorded on Walmart's surveillance video. When Lawson was initially contacted about the phone, he said that he returned the phone to its owner, then later he changed his story stating that he had possession of it but gave it to someone else.

{¶3} On June 1, 2018, Lawson was arraigned. At arraignment, Lawson affirmatively indicated that he received the complaint, that he had read it, and that he understood what he was being charged with. He also was told, and indicated that

Case No. 13-18-20

he understood, the maximum possible penalty for Theft as a first degree misdemeanor.

{¶4} The trial court then asked Lawson if he was "present" when the trial court explained all of the "rights" to all those being collectively arraigned, and Lawson indicated that he was, and that he understood them. Next, the trial court inquired as to how Lawson would like to plead, and Lawson plead not guilty. The trial court set the matter for trial on June 13, 2018, and set bond at $5,000 cash or surety.

{¶5} The State subpoenaed witnesses for June 13, 2018, and the matter proceeded to the trial date. At the beginning of the hearing, Lawson indicated that he did not receive any mail about "[w]ho was going to represent [him] in court." (June 13, 2018, Tr. at 2).

{¶6} The following discussion was then held.

**THE COURT: You've never requested court-appointed counsel.**

**MR. LAWSON: Right. Which they told me I needed to come in before 9:00, which I had an interview that day, and to file for --**

**THE COURT: Mr. Lawson, we talked about this at your arraignment.[1] I, I mean, I don't just fortuitously do this myself.**

**MR. LAWSON: Right. Which I would need to be, you know, represented.**

---

[1] There is nothing in the record before us regarding any discussion of the right to counsel by the trial court and Lawson at the arraignment.

THE COURT: Okay. Mr. Lawson, okay. Bear with me. Okay.

MR. LAWSON: By the time --

THE COURT: When you came through, you said you wanted a trial. I set it for trial. We set it for, you know, within 90 days of [that] date. They gave you a short date because originally you were in jail. You bonded out, apparently, which is great. And I'm happy for you.

MR. LAWSON: (Inaudible).

THE COURT: But you don't come in the day of the trial and say, oh, gee, Judge --

MR. LAWSON: I came to do that --

THE COURT: -- I, I want a, I want a continuance and I want court-appointed counsel. It's too late.

MR. LAWSON: Well, I, I, I came in last week as well and I did try to file the paperwork. There was not any at the desk for the paperwork to, for the continuance. And then I came here --

THE COURT: Mr., Mr. Lawson.

MR. LAWSON: -- to (inaudible).

THE COURT: -- too little, too late.

MR. LAWSON: I tried three times --

THE COURT: Mr. Lawson.

MR. LAWSON: -- to get a representative.

Case No. 13-18-20

> **THE COURT: This is the first I've heard of it. Have you heard of any of this [Prosecutor]? I'm assuming –**
>
> **[PROSECUTOR]: He, he said, gee, I want an attorney. I said, well, you're going to have to motion the Court. Last week he came in and he left, I remember, when you called this case and he was missing.**
>
> **THE COURT: Mr. Lawson, I want you to sit down and talk with [the prosecutor]. We're going to have a trial today. We're either going to have a trial or a plea. Okay? And I want you to sit down and talk with [the prosecutor] like you mean it.**
>
> **MR. LAWSON: All right.**
>
> **THE COURT: Okay. Because this is going to get resolved today. You've waited too long. I'm sorry. I don't do this day up. [sic]**
>
> **MR. LAWSON: All right. I tried.**
>
> **THE COURT: Mr. Lawson, you're not listening to me. It's getting resolved today. All right? Take some time. Talk with [the prosecutor]. The State's got three witnesses. They got video. I mean if you really want to do this, we will. But I would highly, highly, highly suggest you talk to that man. All right. Let's take a few minutes.**

(June 13, 2018, Tr. at 2-5).

{¶7} The court then went off record and when it reconvened the parties indicated that they had reached a plea agreement. The following discussion was then held.

> **THE COURT: How do you wish to plea? You have to enter a plea.**

-5-

**MR. LAWSON:** No contest.

**THE COURT:** You understand by entering a plea of no contest, you're admitting the truth of the facts as alleged on the face of the complaint, or the ticket?

**MR. LAWSON:** Yes.

**THE COURT:** You understand by entering a plea of no contest, you're admitting the truth – or that you're waiving certain fundamental, constitutional rights?

**MR. LAWSON:** Yes.

**THE COURT:** We're going to go over them.

First of all, do you understand you're waiving your right to an attorney, and if you cannot afford an attorney, one could be appointed to represent you. But by entering a plea of no contest, you waive that right.

Do you understand that?

**MR. LAWSON:** Yes.

**THE COURT:** Do you understand that you're waiving your right to a jury trial?

**MR. LAWSON:** Yes.

**THE COURT:** Do you understand you're waiving your right to confront witnesses against you?

**MR. LAWSON:** Yes.

**THE COURT:** Do you understand you're waiving your right to require the State of Ohio to prove your guilt beyond a reasonable doubt at trial?

**MR. LAWSON:** Yes.

**THE COURT: Absent a trial, you cannot be compelled to testify against yourself.**

**Do you understand that?**

**MR. LAWSON: Yes.**

**THE COURT: Do you still wish for the Court to accept your plea of no contest?**

**MR. LAWSON: Yes.**

**THE COURT: Based upon our conversation in open court, I'm going to deem that you've knowingly, voluntarily, and intelligently waived your rights. I'll accept your plea of no contest.**

**Mr. Lawson, anything you want to tell me about what happened?**

**MR. LAWSON: Your Honor.**

**THE COURT: Yes? No?**

**MR. LAWSON: No, Your honor.**

(June 13, 2018, Tr. at 5-8).

**{¶8}** After this colloquy, a lengthy statement of the incident leading to the charges in this case was read into the record. At the conclusion, the trial court asked if Lawson still had the victim's cell phone. Lawson indicated that he had given it to a friend in the parking lot as seen on the surveillance video. Based upon the review of the citation, the officer's report, and the plea of no contest, the trial court found Lawson guilty of Theft as charged.

{¶9} The trial court asked for the State's sentencing recommendation. The State recommended 180 days in jail, with 180 days suspended, a $250 fine, two years of probation, and a no trespass order with Walmart. However, the State indicated that the victim was present, that it was her cell phone that had been taken, and that it had great sentimental value due to all of the pictures on it, including such things as first communion pictures of her children. The State indicated that the victim would like the phone back if possible.

{¶10} Lawson spoke in mitigation of sentence, stating that he had full custody of two children, that he had a job, and that he was training for a management position. Lawson stated that he was a good person, and that he would try to get the victim's phone back. At that time, the trial court indicated it would continue sentencing to give Lawson a chance to get the victim's phone back.

{¶11} The matter proceeded to a sentencing hearing on June 15, 2018. At the hearing, the court asked Lawson where the phone was, but Lawson said he had not had contact with the individual he gave it to since he gave it to him. Lawson then seemed to indicate he never "got discovery to his name" to "search him down" even though Lawson clearly indicated at the prior hearing that he had given the phone to "Christopher," whom the officer indicated that Lawson seemed to know.

{¶12} The trial court then asked again for the State's recommendation as to sentencing, and the State maintained its prior recommendation, just requesting for

the victim that the phone be returned because the victim had breast cancer and she had special pictures of her children on the phone.

{¶13} The trial court gave Lawson another chance to speak in mitigation. At that time Lawson reiterated that he had two children and a job, and that he had three houses, one of which was paid off. Lawson then requested leniency.

{¶14} The trial court sentenced Lawson to 180 days in jail, with 120 days suspended, 2 years of probation, and ordered a $150 fine.

{¶15} After the trial court made its sentencing pronouncement Lawson said, "So I still would have to go to jail?" (Tr. at 5). When the trial court indicated that he would have to go to jail, Lawson requested to withdraw his plea. The trial court replied that it was too late for that, that Lawson did not get to second guess his plea. Lawson then asked if he could give his notice of appeal. At that time, Lawson was remanded to custody.

{¶16} Subsequently, Lawson filed a notice of appeal pro se. He acquired counsel, and asserts the following assignment of error for our review.

**Assignment of Error**
**The trial court erred in accepting appellant's plea of no contest when appellant asserted his right to have counsel and was denied due process.**

{¶17} In his assignment of error, Lawson argues that he did not elect to represent himself and that he did not validly waive his right to counsel at the change-

of-plea hearing; rather, he contends he was denied due process in this case, and that his plea was coerced, rendering it involuntary.

*Relevant Authority*

**{¶18}** In cases with misdemeanor charges, a defendant has a right to counsel under the Sixth Amendment if a conviction may result in incarceration. *State v. Wilson*, 3d Dist. Seneca No. 13-17-41, 2018-Ohio-2805, ¶ 5, citing *State v. Miyamoto*, 3d Dist. Union No. 14-05-43, 2006-Ohio-1776, ¶ 13. However, a criminal defendant also has "an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus. These Sixth Amendment rights are embodied in Crim.R. 44, which reads in its relevant part as follows:

> **(B) Counsel in Petty Offenses. Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.**
>
> **(C) Waiver of Counsel. Waiver of counsel shall be in open court and the advice and waiver shall be recorded * * *.**

Crim.R. 44(B), (C). Thus, waiver of the right to counsel "cannot be presumed from a silent record." *Miyamoto* at ¶ 14.

-10-

{¶19} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson* at paragraph two of the syllabus.

> **[A] waiver of the right to counsel must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. In order for the defendant to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'**

(Citations omitted.) *State v. Taylor*, 3d Dist. Seneca No. 13-12-35, 2013-Ohio-1300, ¶ 18. "[C]ourts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel. The state bears the burden of overcoming presumptions against a valid waiver." *Taylor* at ¶ 20, citing *State v. Dyer*, 117 Ohio App.3d 92, 95-96, 689 N.E.2d 1034 (2d Dist.1996).

{¶20} In addition, as to the plea itself, the Supreme Court of Ohio has stated, "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179, 660 N.E.2d 450. A plea, if coerced or induced by promises or threats renders the plea involuntary. *State v. Kelly*, 8th Dist. Cuyahoga Nos. 91875

and 91876, 2010-Ohio-432, ¶ 21, citing *State v. Allen*, 6th Dist. No. S-09-004, 2009-Ohio-3799, ¶ 16. With respect to a judge's participation in the plea-bargaining process, the Supreme Court of Ohio has cautioned that "the judge's position in the criminal justice system presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume." *State v. Byrd*, 63 Ohio St.2d 288, 292, 407 N.E.2d 1384 (1980). Judicial participation is strongly discouraged but does not render a plea per se involuntary; the ultimate inquiry is whether the judge's active conduct could have led the defendant to believe he could not get a fair trial, including a fair sentence after trial, and whether the judicial participation undermined the voluntariness of the plea. *State v. Heard*, 8th Dist. Cuyahoga No. 104952, 2017-Ohio-8310, ¶ 18 citing, *State v. Sawyer*, 183 Ohio App.3d 65, 2009-Ohio-3097, ¶ 54 (1st Dist.), citing *State v. Byrd,* 63 Ohio St.2d 288, 293 (1986). We consider the record in its entirety to determine the voluntariness of the plea. *State v. Jabbaar*, 8th Dist. Cuyahoga No. 98218, 2013-Ohio-1655, ¶ 29.

## Analysis

**{¶21}** At the outset, we have a number of concerns with this case, beginning with the fact that there is no indication in the arraignment transcript provided that Lawson was notified of his right to counsel at that time. While there is a reference to some group explanation of "rights" at the arraignment, which may or may not

-12-

have involved Lawson's right to counsel, before Lawson was personally addressed by the trial court there is no transcript of that group explanation included in our record.

{¶22} As a result, the only discussion of counsel in the record before us commences when Lawson showed up on the day of his trial and indicated that he wanted appointed counsel but had not yet been able to obtain one. At that time, there was some discussion about Lawson's prior attempts at obtaining court-appointed counsel, but the trial court never made any direct inquiry into Lawson's desire for an attorney. Instead, the trial court simply stated to Lawson in no uncertain terms that his case was going to go forward via trial or plea that day regardless of Lawson's inquiries about counsel.

{¶23} Next, the trial court informed Lawson that the State had three witnesses and video of the incident, clearly implying that the trial judge believed the State had a significant amount of evidence, which would likely render a foregone conclusion of guilt at any trial; and as a result, the trial court "highly, highly, highly suggest[ed]" that Lawson personally and without counsel talk to the prosecutor to resolve the matter through a plea. At that time, Lawson presumably did speak to the prosecutor off the record, and a plea agreement was apparently reached.

{¶24} On its face, the colloquy for the plea between the trial court and Lawson thereafter was generally sufficient as to both the offense and the waiver of

counsel. However, as a result of the limited record set forth above, it is our conclusion that the entire plea colloquy is nevertheless tainted and undermined by the pressure placed on Lawson by the trial court before Lawson ever spoke to the prosecutor. For example, as part of the "waiver of counsel" during the plea colloquy the trial court purported to advise Lawson that he had a right to counsel and that if he could not afford one that one would be appointed for him, thus clearly implying that the matter could be continued for this purpose, despite telling Lawson exactly the opposite just prior to the plea; specifically that the matter would go forward that day regardless.

{¶25} On the basis of the record before us, we cannot find that this constituted a voluntary plea on Lawson's behalf. The trial court clearly made it seem like Lawson had no option other than to proceed without counsel to either take a plea and be found guilty or go to trial and likely be found guilty on the weight of the State's evidence. At the very least, it seems that the trial court's actions *could* have led Lawson to believe that he could not get a fair trial to the bench, given that the trial court implied that the State's evidence was significant even before Lawson took part in any negotiation with the prosecutor. Therefore we are compelled to sustain Lawson's assignment of error and vacate his no contest plea.

*Conclusion*

**{¶26}** For the foregoing reasons, Lawson's assignment of error is sustained and the judgment of the Tiffin-Fostoria Municipal Court is reversed.  This cause is remanded to the trial court for further proceedings consistent with this opinion.

***Judgment Reversed and***
***Cause Remanded***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**