[Cite as *State v. Heard*, 2017-Ohio-8310.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104952**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CARLTON DEVON HEARD

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601703-A

**BEFORE:** Keough, A.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** October 26, 2017

**ATTORNEY FOR APPELLANT**

Kimberly K. Yoder
Kimberly K. Yoder Co., L.P.A.
20525 Center Ridge Road, Suite 133
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Amy Venesile
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Defendant-appellant, Carlton Devon Heard ("Heard"), appeals from the trial court's judgment, rendered after his no contest plea, finding him guilty of attempted murder, felonious assault, and aggravated robbery, and sentencing him to 14 years in prison. We reverse and remand, with instructions that the administrative judge assign this case to a different judge.

## I. Background

{¶2} In December 2015, Heard was indicted in Case No. CR-15-601703-A for attempted murder in violation of R.C. 2903.02(A), felonious assault in violation of R.C. 2903.11(A)(1), aggravated robbery in violation of R.C. 2911.01(A)(1), robbery in violation of R.C. 2911.02(A)(1), carrying concealed weapons in violation of R.C. 2923.12(A)(2), and having weapons while under disability in violation of R.C. 2923.13(A)(2). With the exception of the carrying concealed weapons charge, all of the counts carried firearm specifications. When he was charged, Heard was on probation in Case No. CR-14-587295 for carrying concealed weapons in violation of R.C. 2923.12(A)(2).

{¶3} Discovery commenced and the trial court held numerous pretrials. The case was set for trial three times; the trial date was continued once at the state's request and twice at Heard's request.

{¶4} On August 15, 2016, when the parties appeared for trial, defense counsel requested another continuance, informing the court that Heard had "denied responsibility

and claimed his innocence to this since the time I met him," and that only half an hour earlier, had told counsel he had been "covering up for the real shooter" and then given counsel the shooter's name. Counsel said he had given the name to the prosecutor, and was asking the court for a continuance to investigate this alternative theory of the case.

**{¶5}** The state objected to defense counsel's request, arguing that the case had been set for trial three times, and a delay in trial might allow the state's witnesses to be intimidated. The judge noted that Heard had a prior intimidation conviction.

**{¶6}** The judge then told Heard that it did not make sense that he would wait so long to offer the name of the real shooter, and that the new information appeared to be just a ploy to get another continuance. The judge told Heard that "if we don't plead the case, we're going to trial right now."

**{¶7}** The judge stated that although Heard had not authorized his lawyer to request a plea bargain, he (the judge) had determined that even if the prosecutor sought authorization for a plea deal, the court would reject what the state would likely offer because "I think if you plead out to a case like this, you need to do somewhere between 13 and 15 years in the state penal institution."

**{¶8}** The judge then told Heard that if he went to trial and was convicted, he would get "at least double, perhaps triple or more time, because you're going to be convicted of an additional seven counts," and the judge would run the sentences consecutively.

**{¶9}** The judge then offered his own deal to Heard:

What I'm suggesting is that you can plead no contest to the indictment and the court will sentence you. My only promise is I won't consecutively sentence you. If you no contest the indictment, I will sentence you on a concurrent period of incarceration, but you're looking at approximately 14 years in the state penal institution, 3 for the gun and 11 years on the underlying offense, and I would run the other time concurrent.

If you take the case to trial and are convicted, you will do multiples of 14 years, because if you're convicted of these charges, that's what you deserve. You deserve to spend what could be the rest of your life in the state penal institution.

{¶10} After reminding Heard that "this case will not be continued," and "if there's no plea, we're going to start trying it right now," the judge asked Heard what he wanted to do. Heard then asked the judge whether he would be sentenced to over ten years if he pleaded guilty that day, and the judge promised him, "if you cop out today, you're going to do 14 years."

{¶11} When Heard told the judge that he wanted to go to trial, Heard's mother spoke up from the gallery and told Heard to "listen to what he said." After a discussion off the record, the proceedings resumed. The judge told Heard that he did not know what would happen to him at trial, and then told the story of two "knuckleheads" who decided to take their case to trial and were sentenced to 78 years in prison, even after the judge told them they could serve 15 years if they pleaded guilty. The judge told Heard that he was presumed innocent and would get a fair trial, "but that's just the facts, that's the reality of the situation."

{¶12} Heard then asked the judge whether he could see his four-year-old daughter before he went to prison if he pleaded guilty. The judge told him no, stating,

"[o]ne thing you have to understand, a guilty plea is a complete admission of your guilt. You accept responsibility for what you did. * * * Why should we care more about your family than the victim's family? So I'm not going to change the rules for you to see the child in county jail."

{¶13} The judge then again asked Heard "what is it you would like to do?" When Heard responded, "I didn't do it," the judge told him that he could take the case to trial, and that "you have a beautiful suit on, you can sit there and maybe the jury will think you're a great guy and you're not guilty." But, the judge stated, "we're either going to bring a jury up now and try this case or you're going to enter a plea." After a brief pause, the judge stated, "All right, let's bring the jury up." He then told Heard, "the jury is on its way. If they walk into this room, my deal with you is off." Heard then stated he would take the deal.

{¶14} The prosecutor then outlined the counts charged in the indictment and penalties associated with each count. The judge addressed Heard and determined that he is a United States citizen and was not under the influence of drugs, alcohol, or medication. The judge then explained the constitutional rights Heard would waive by pleading no contest. The judge then reviewed the potential penalties for each count charged in the indictment, and told Heard that if he pleaded, he would be sentenced to 14 years in prison, with credit for time served, and would be subject to five years mandatory postrelease control. Heard then pleaded no contest to each count of the indictment.

**{¶15}** The judge then sentenced Heard to 14 years in prison and terminated probation in Case No. CR-14-587295. This appeal followed.

## II. Law and Analysis

### A. A Coerced Plea

**{¶16}** In his first assignment of error, Heard contends that the judge coerced his plea and, therefore, it was not made voluntarily.

**{¶17}** A defendant's plea must be knowingly, intelligently, and voluntarily made. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). The enforcement of a plea that is not knowingly, voluntarily, and intelligently made is unconstitutional under both the United States and Ohio Constitutions. *Id.*

**{¶18}** With respect to the judge's participation in the plea-bargaining process, the Ohio Supreme Court has cautioned that "the judge's position in the criminal justice system presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume." *State v. Byrd*, 63 Ohio St.2d 288, 292, 407 N.E.2d 1384 (1980). Judicial participation is strongly discouraged but does not render a plea per se involuntary; the ultimate inquiry is whether the judge's active conduct could have led the defendant to believe he could not get a fair trial, including a fair sentence after trial, and whether the judicial participation undermined the voluntariness of the plea. *State v. Sawyer*, 183 Ohio App.3d 65, 2009-Ohio-3097, 915 N.E.2d 715, ¶ 54 (1st Dist.), citing *Byrd* at 293. We consider the record in its entirety to determine the

voluntariness of the plea. *State v. Jabbaar*, 8th Dist. Cuyahoga No. 98218, 2013-Ohio-1655, ¶ 29.

{¶19} On this record, there is no question that the judge's participation in the plea process could have led Heard to believe he could not get a fair trial or fair sentence after trial. Initially, we note that the plea offer came only from the judge. The state did not participate in the plea process at all: the prosecutor did not propose any plea offer and said absolutely nothing when the judge proposed his own deal with Heard — that Heard plead no contest to the indictment in exchange for a 14-year sentence. In fact, the judge told Heard the proposed plea agreement was "my deal with you." The judge more than "actively participated" in the plea process; he created and presented the offer.

{¶20} Furthermore, although the judge told Heard he would get a fair trial, he clearly conveyed to Heard that he had already decided that Heard was guilty. When the prosecutor objected to the proposed continuance because additional time might allow the state's witnesses "to be approached or attempted to be deterred from coming to court," the judge noted that Heard had a conviction "back in the day" for intimidation of a crime victim. The judge then told Heard that his late identification of the real shooter did not "make any sense" and that he could not have truthfully identified the shooter because the victim had identified him as the shooter and he was 6'5" tall, but the person Heard identified as the shooter was only 5'6" tall. The judge also told Heard that if he went to trial, "you're going to be convicted of an additional seven counts." Heard could reasonably glean from these comments that despite the assurances of a fair trial, the

judge believed he was guilty, even though no evidence against him had yet been presented.

{¶21} Moreover, in light of the judge's comments about sentencing, Heard could only have concluded that he would not receive a fair sentence if he took his case to trial and was convicted. Specifically, the judge told Heard that if he went to trial and were convicted, the judge would impose "multiples of 14 years" because "that's what you deserve. You deserve to spend the rest of your life in prison." This was not a discussion of the penalty associated with the plea as opposed to the possible penalties that Heard faced if he took his case to trial; it was a statement that the judge had predetermined Heard's sentence if he were convicted after trial.

{¶22} Additionally, the judge never gave Heard time to adequately consider the offer. Although the judge allowed Heard to speak with his mother, he did not give him any time to consult with his lawyer about the plea offer, and in fact told him, "we're either going to bring a jury up now and try this case or you're going to enter a plea." When Heard briefly hesitated, he told him, "the jury is on its way. If they walk into this room, my deal with you is off." The judge's ultimatum can only be considered coercion.

{¶23} Our review of the entire record leads to the inescapable conclusion that because of the trial judge's active and inappropriate efforts to secure Heard's plea, the plea was not made voluntarily. Accordingly, it is void and must be vacated.

{¶24} The first assignment of error is sustained.

**B. The Effect of the Plea**

{¶25} Under Crim.R. 11(C)(2), a court shall not accept a guilty or no contest plea in a felony case without first addressing the defendant personally and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *.

> (b) Informing the defendant of and determining that the defendant understands the effects of the plea * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶26} The purpose of Crim.R. 11(C) is to convey specific information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 5. Whether the trial court accepted a plea in conformance with Crim.R. 11(C) is subject to de novo review. *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 22.

{¶27} In his second assignment of error, Heard contends that the trial court committed reversible error because it never advised him of the effect of his plea.

{¶28} Crim.R. 11(B)(2) contains the specific instruction that a court must provide a defendant when informing the defendant of the effect of a no contest plea. *Cleveland*

*v. Brown*, 8th Dist. Cuyahoga No. 97878, 2012-Ohio-4722, ¶ 9. It states, "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceedings." Thus, prior to accepting Heard's no contest plea, the trial court was required to advise him either orally or in writing of the effect of his plea as set forth in Crim.R. 11(B)(2). *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677 ("For a no contest plea, a defendant must be informed that the plea of no contest is not an admission of guilt but is an admission of the truth of the facts alleged in the complaint, and that the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.")

{¶29} In considering whether a trial court satisfied its duties under Crim.R. 11(C)(2), reviewing courts distinguish between constitutional and nonconstitutional rights. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 30. The trial court must strictly comply with the requirements of Crim.R. 11(C)(2) relating to the waiver of constitutional rights. *Id.* at ¶ 31.

{¶30} With respect to nonconstitutional rights, such as the right to be informed of the effect of the plea, substantial compliance is required. *Id.* Where substantial compliance is implicated, a reviewing court must consider whether the trial court partially complied with Crim.R. 11(C), or completely failed to comply with the rule. *Id.* at ¶ 32. Where the trial court partially complied, the defendant's plea may be vacated only upon a

showing of prejudice, i.e., that the plea would not have otherwise been made. *Id.*, citing *State v. Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474 (1990). However, where the trial court completely failed to comply with the rule, no showing of prejudice is required, and the plea must be vacated. *Id.*; *State v. Szarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 224; *Cleveland v. Mayfield*, 8th Dist. Cuyahoga No. 100494, 2014-Ohio-3712, ¶ 8; *Solon v. Bollin-Booth*, 8th Dist. Cuyahoga No. 97099, 2012-Ohio-815, ¶ 25-26; *State v. Dundics*, 11th Dist. Trumbull No. 2015-T-0047, 2016-Ohio-1368, ¶ 27 (Grendell, J., concurring); *Toledo v. Mroczkowski*, 6th Dist. Lucas No. L-04-1338, 2005-Ohio-5742, ¶ 19.

{¶31} Here, there was a complete failure to comply with Crim.R. 11(C). The record reflects that the trial court gave no explanation whatsoever to Heard of the effect of his no contest plea. The only reference to the effect of the plea was the judge's off-hand comment regarding why he would not allow Heard to see his child before going to prison, when the judge told Heard that "a guilty plea is a complete admission of your guilt." Although the judge's statement regarding the effect of a guilty plea was true, the proposed plea agreement was that Heard plead no contest, not guilty, to the indictment. Without any explanation of the effect of his no contest plea, Heard's plea was not knowingly, voluntarily, and intelligently made.

{¶32} Finally, we note that Heard asserted his innocence to the charges. Heard's counsel told the judge that Heard had claimed his innocence from the time the lawyer had met him and identified the "real shooter" by name, and Heard told the judge "I didn't do

it." Accordingly, even if a prejudice analysis were required in this case, it is apparent that Heard was prejudiced by the trial court's failure to explain that by pleading no contest to the indictment, Heard was admitting to the facts as charged in the indictment.

**{¶33}** Because the trial court failed to give Heard any explanation of the effect of his no contest plea, there was a complete failure to comply with Crim.R. 11(C), and Heard's plea must be vacated. The second assignment of error is sustained.

**{¶34}** In light of our resolution of the first and second assignments of error, Heard's third assignment of error, which asserts that the judge's bias and lack of impartiality violated Heard's due process rights, and his fourth assignment of error, in which Heard contends that his counsel was ineffective for not objecting to the trial court's coercion of his plea, are rendered moot and we need not address them. App.R. 12(A)(1)(c).

**{¶35}** Judgment reversed and remanded, with instructions that the administrative judge assign the case to a different judge.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR