[Cite as *State v. Byas*, 2021-Ohio-3924.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110157 |
| v. | : | |
| DEONTAY BYAS, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** November 4, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-639419-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and James S. Gallagher, Assistant Prosecuting Attorney, *for appellee.*

Milton A. Kramer Law Clinic Center, Case Western Reserve University School of Law, Andrew S. Pollis and Joseph Shell, Supervising Attorneys, Caroline Ford, Nadia Haile, and David Codispoti, Certified Legal Interns, *for appellant.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Defendant-appellant Deonte Byas brings this appeal challenging his convictions for drug trafficking, drug possession, and possessing criminal tools.

Byas argues that the trial court erred in coercing an involuntary no-contest plea and that the trial court failed to comply with Crim.R. 11(C)(2). After a thorough review of the record and law, this court vacates Byas's plea and sentence, and remands the matter for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶ 2} On April 22, 2019, Cleveland police officers were patrolling Lorain Avenue for prostitution and drug-related activity. Officers observed a female enter a vehicle in the area they were patrolling. The vehicle was also involved in multiple suspected drug transactions. As a result, the officers initiated a traffic stop.

{¶ 3} Byas was driving the vehicle that the officers pulled over. The female passenger was in the back seat, and she informed the officers that Byas threw a scale and a bag of heroin into the back seat. Officers also recovered a bag containing cocaine in the vehicle's center console. Byas was arrested for his involvement in the drug-related activity.

{¶ 4} In Cuyahoga C.P. No. CR-19-639419-A (hereinafter "CR-19-639419" or "new case"), Byas was charged in a five-count indictment on June 24, 2019, with (1) drug trafficking (heroin), (2) drug possession (heroin), (3) drug trafficking (cocaine), (4) drug possession (cocaine), and (5) possessing criminal tools. All five counts contained forfeiture specifications.

{¶ 5} Byas was arraigned on September 27, 2019. He pled not guilty to the indictment.

**{¶ 6}** The parties appeared in court on December 3, 2019, for a scheduled pretrial hearing in the new case. During the December 3, 2019 hearing, the trial court, not the prosecution, offered a "resolution" or "a plea" to Byas under which Byas would receive an aggregate two-year prison sentence for the drug-related charges in the new case and Byas's community control violations,[1] and the trial court would waive fines, fees, and costs. (Tr. 3-4.) The trial court explained the possible penalties that Byas was facing on the drug-related charges in the new case and the penalties he would receive for violating community control.

**{¶ 7}** Byas inquired whether he would be eligible for judicial release if he accepted the trial court's resolution. The trial court advised Byas that he would not be eligible for judicial release and that he would "do [his] time."

**{¶ 8}** The trial court confirmed that Byas did not have any other questions. Thereafter, the trial court asked Byas whether he wanted to "enter a plea on the new case," or whether he wanted "to go forward with the probation violation?" (Tr. 6.) One of Byas's defense attorneys requested an opportunity to confer with Byas, and the trial court granted counsel's request.

**{¶ 9}** Byas's originally assigned attorney advised the trial court that Byas no longer wanted him to represent him. Following this advisement, the trial court stated:

---

[1] Although the trial court indicated that it placed Byas on community control in 2017 in four separate criminal cases, the trial court's online docket reflects that Byas allegedly violated community control in the following six criminal cases: (1) CR-17-623241-A, (2) CR-17-620712-A, (3) CR-17-616251-A, (4) CR-17-615823-A, (5) CR-17-615790-A, and (6) CR-17-615615-A.

The Court: * * * Mr. Byas, let me explain something to you, and I have been considerate to your family. I've put more people on probation than any other judge in the State of Ohio.

* * *

The county jail is in crisis. I cannot permit people to just languish in the county jail. You either are going to resolve [the new case] this case today with two years, or you're going to be, in two minutes, a probation violator, and you're going to be sent down for three years on the first probation violation.

This has nothing to do with [Byas's originally assigned counsel]. And your disrespectful behavior to [originally assigned counsel] is offensive to my Court.

I have treated you with decency and respect. For you to pretend that this is about [originally assigned counsel], who is one of the finest attorneys in Cuyahoga County, is disgraceful. It's flipping the script and blaming somebody else. You're not going to get a new attorney. But what you're going to get is a consecutive period of incarceration if you're probation violated, and then eventually convicted of the new case; okay?

Do not come into my courtroom and attempt to blame your attorney or the system. It's not about us. We're here because of your behavior.

Now, you have reached the very limit of my patience. I don't have to have this conversation with you. I, right now, could sentence you to six years in a state penal institution and recuse myself from the new case, and send it to a different judge who could give you an additional six years.

(Tr. 8-9.)

{¶ 10} Immediately following the trial court's statement, Byas stated, without being prompted, "*I plead guilty*, your Honor." (Emphasis added.) (Tr. 9.) However, Byas appeared to opine a two- or three-year sentence was not warranted because he did not "do anything violent to anyone, or hurt anyone[.]" (Tr. 10.)

{¶ 11} The trial court explained that Byas did not have to plead guilty and that it did not make any difference to the court how Byas pled. Once again, the trial court asked Byas how he wanted to proceed. Byas indicated, again, that he wanted to "*plead guilty.*" (Emphasis added.) (Tr. 11.)

{¶ 12} At the trial court's request, Byas's originally assigned attorney orally moved to withdraw from the representation during plea discussions. The trial court permitted Byas to proceed with a new attorney that was representing Byas in relation to a potential federal criminal matter.

{¶ 13} Byas's new attorney confirmed that Byas "does want to take the two years." (Tr. 11.) However, counsel expressed concern about the potential charges Byas may face in federal court. Following a discussion between the trial court and Byas's new attorney about the potential federal charges, the trial court inquired again whether Byas wanted to enter a plea. Byas responded in the affirmative, "[y]es, sir." (Tr. 14.)

{¶ 14} The trial court confirmed with the prosecutor that the case file had not "been marked," such that Byas "can *plead no contest* to the indictment[.]" (Emphasis added.) (Tr. 14.) Following these plea discussions between the trial court, Byas, defense counsel, and the prosecutor, the trial court went "on the record" and proceeded to formally take Byas's plea.

{¶ 15} The trial court explained Byas's constitutional rights to him. The trial court advised Byas that he does not "have to *plead guilty*" and that he can try the case to a jury. (Emphasis added.) (Tr. 17.) The trial court explained the

constitutional rights Byas would have if he elected to try the case. The trial court stated that Byas would be "waiving all the rights that I just said." (Tr. 20.)

{¶ 16} The trial court explained that even if Byas was found not guilty on the drug-related charges in the new case, he still faced the probation violations, which only required a finding of probable cause rather than proof beyond a reasonable doubt. The trial court advised Byas of the potential penalty, a prison term of two years, that he would receive under the plea bargain proposed by the trial court. The trial court advised Byas of the penalties he faced on the fourth- and fifth-degree felonies charged in the new case.

{¶ 17} Following the court's advisements, the court asked whether Byas had any questions. Byas indicated that he did not. The trial court inquired whether Byas would be entering the plea "freely, knowledgeably, and voluntarily[.]" (Tr. 21.) Byas responded affirmatively. Other than what was placed on the record during the December 3, 2019 hearing, Byas confirmed that no threats or promises had been made to him. Byas confirmed that he was satisfied with the representation provided by his attorney.

{¶ 18} Following the Crim.R. 11 colloquy, the trial court formally took Byas's plea: "How do you plead? *You're going to plead no contest. Remember that.* How do you plead to [Counts 1-5 in CR-19-639419]?" (Emphasis added.) (Tr. 22.) Byas pled no contest to all five counts. (Tr. 22.)

{¶ 19} The prosecutor placed the factual basis for the charges to which Byas pled no contest on the record. (Tr. 23.) Based on the prosecutor's factual rendition,

the trial court found Byas guilty on all five counts. The trial court proceeded immediately to sentencing.

{¶ 20} The trial court imposed a prison term of two years: one year on Count 1, one year on Count 2, one year on Count 3, one year on Count 4, and one year on Count 5. The trial court ordered Counts 1 and 3 to run consecutively to one another and concurrently with Counts 2, 4, and 5. The trial court failed to incorporate its consecutive-sentence findings into the December 9, 2019 sentencing journal entry.

{¶ 21} On December 14, 2020, Byas, acting pro se, filed a notice of appeal and a motion for a delayed appeal. Byas argued that he was never advised that he had a right to appeal. This court granted Byas's motion for delayed appeal on January 11, 2021, and appointed counsel to represent appellant in this appeal.

{¶ 22} Byas assigns two errors for review:

I. The trial court erred in coercing an involuntary plea.

II. The trial court erred in accepting a plea without complying with Crim.R. 11(C)(2).

## II. Law and Analysis

### A. No Contest Plea

{¶ 23} Byas's assignments of error both pertain to his no contest plea.

### 1. Coercion

{¶ 24} In his first assignment of error, Byas argues that the trial court coerced him into pleading no contest and that the plea was not entered voluntarily. Specifically, Byas contends,

[t]he trial judge coerced [Byas] into pleading no contest by creating the plea offer, pressuring [Byas] into accepting it immediately, and repeatedly interjecting comments reflecting bias against [Byas]. The bias was reflected in suggestions that the judge had already determined that [Byas] was guilty of both the new charges [in CR-19-639419] and probation violations. It was also reflected in comments about [Byas's] demographic. These tactics resulted in an involuntary plea.

Appellant's brief at 12.

{¶ 25} A defendant's plea must be made knowingly, intelligently, and voluntarily. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). The enforcement of a plea that is not made knowingly, voluntarily, and intelligently is unconstitutional under both the United States and Ohio Constitutions. *Id.*

{¶ 26} In regards to a trial court's participation in plea negotiations, the Ohio Supreme Court has cautioned that "the judge's position in the criminal justice system presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume." *State v. Byrd*, 63 Ohio St.2d 288, 293, 407 N.E.2d 1384 (1980). Although judicial participation is strongly discouraged, it does not render a plea per se involuntary. Rather, the ultimate inquiry is whether the trial court's active conduct could have led the defendant to believe he or she could not get a fair trial, including a fair sentence after trial, and whether the judicial participation undermined the voluntariness of the plea. *State v. Sawyer*, 183 Ohio App.3d 65, 2009-Ohio-3097, 915 N.E.2d 715, ¶ 54 (1st Dist.), citing *Byrd* at 293. In determining the voluntariness of a defendant's plea, this court considers the record in its entirety. *State v. Jabbaar*, 2013-Ohio-1655, 991 N.E.2d 290, ¶ 29 (8th Dist.).

{¶ 27} In the instant matter, Byas directs this court to *State v. Heard*, 2017-Ohio-8310, 87 N.E.3d 245 (8th Dist.),[2] in which this court held that the defendant did not enter a voluntary plea due to the trial judge's coercion in the plea bargaining process. The state argues that *Heard* is distinguishable because the trial court did not force Byas to enter the plea, and the trial court specifically informed Byas that he did not need to enter a plea.

{¶ 28} In *Heard*, the parties appeared in court for trial. Defense counsel requested a continuance, explaining that the defendant "'denied responsibility and claimed his innocence to this since the time [counsel] met him,' and that only half an hour earlier, had told counsel he had been 'covering up for the real shooter' and then given counsel the shooter's name." *Id.* at ¶ 4. The state objected to defense counsel's request for a continuance. The trial court opined that the new information about the shooter was just a "ploy to get another continuance." The trial court informed the defendant that "if we don't plead the case, we're going to trial right now." *Id.* at ¶ 6.

{¶ 29} The trial court advised the defendant that the court would likely reject any plea authorized by the state because "I think if you plead out to a case like this, you need to do somewhere between 13 and 15 years in the state penal institution." *Id.* at ¶ 7. Furthermore, the trial court explained that if the defendant was convicted at trial, he would receive "at least double, perhaps triple or more time[.]" *Id.* at ¶ 8.

---

[2] The appeal before this court and *Heard* involve the same trial judge.

{¶ 30} The trial court offered his own plea deal to the defendant:

What I'm suggesting is that you can plead no contest to the indictment and the court will sentence you. My only promise is I won't consecutively sentence you. If you no contest the indictment, I will sentence you on a concurrent period of incarceration, but you're looking at approximately 14 years in the state penal institution, 3 for the gun and 11 years on the underlying offense, and I would run the other time concurrent.

If you take the case to trial and are convicted, you will do multiples of 14 years, because if you're convicted of these charges, that's what you deserve. You deserve to spend what could be the rest of your life in the state penal institution.

*Heard*, 2017-Ohio-8310, 87 N.E.3d 245, at ¶ 9.

{¶ 31} The trial court reminded the defendant that the matter would not be continued and that trial would commence immediately if the defendant did not enter a plea. Then, the trial court asked the defendant what he wanted to do.

{¶ 32} The defendant asked whether he would be sentenced to more than ten years if he pled guilty right then. The trial court stated that the defendant would be sentenced to 14 years in prison. The defendant advised the trial court that he wanted to go to trial.

{¶ 33} After more discussion, the defendant asked the trial court whether, if he pled guilty, he could see his daughter before going to prison. The trial court stated that the defendant could not see his daughter.

{¶ 34} The trial court asked the defendant again how he wanted to proceed. The defendant responded, "I didn't do it[.]" *Heard*, 2017-Ohio-8310, 87 N.E.3d 245, at ¶ 13. The trial court asserted, "'we're either going to bring a jury up now and try this case or you're going to enter a plea.' After a brief pause, the judge stated, 'All

right, let's bring the jury up.' He then told [the defendant], 'the jury is on its way. If they walk into this room, my deal with you is off.'" *Id.* At this point, the defendant stated he would take the deal.

{¶ 35} On appeal, the defendant argued that his plea was not made voluntarily and that it was coerced by the trial judge. This court vacated the defendant's plea, concluding that it was not made voluntarily. This court explained that (1) the defendant could have believed, based on the judge's participation in the plea process, that he could not get a fair trial or fair sentence after trial; (2) the judge did more than actively participate in the plea process, the judge created and presented the plea offer; (3) the state did not participate in the plea process at all, and the plea offer came only from the judge; (4) although the judge told the defendant he would get a fair trial, the judge's comments clearly conveyed to the defendant that the judge had already decided the defendant was guilty; and (5) based on the judge's comments about sentencing, the defendant could only have concluded that he would not receive a fair sentence if he was convicted at trial. This court also noted that the judge never gave the defendant time to adequately consider the plea offer. Although the judge permitted the defendant to speak with his mother, the defendant did not have an opportunity to confer with his attorney about the plea offer. When the defendant briefly hesitated about how he wanted to proceed, the judge told the defendant "the jury is on its way. If they walk into this room, my deal with you is off." *Id.* at ¶ 22. This court held that the trial court's "ultimatum can only be considered coercion." *Id.*

{¶ 36} In the instant matter, after reviewing the record, we find that Byas's plea was not voluntarily entered. Here, like *Heard*, the plea offer came from the trial court, not the prosecutor. The state concedes that the trial court "participated in plea negotiation[.]" The record reflects that the state did not participate in the plea process at all, except to confirm that the case file had not been marked, that Byas could plead no contest to the indictment, and to indicate that the state had been informed that Byas "intends to plead to the indictment[.]" (Tr. 14-15.)

{¶ 37} Here, the trial court offered an ultimatum to Byas with respect to the new case — accept the trial court's plea offer and resolve the new case today, or the trial court would find him in violation of his community control and impose a prison sentence of three or six years on the violations. Like *Heard*, 2017-Ohio-8310, 87 N.E.3d 245, the trial court's ultimatum in this case can only be considered coercion.

{¶ 38} The alleged community control violations were entirely unrelated to the drug-related charges in the new case. Byas appeared in court on December 3, 2019, for a pretrial hearing in the new case. During this pretrial hearing, the trial court indicated that if Byas did not accept the court's proposed resolution, it would proceed immediately with a violation hearing and the imposition of sentence on the alleged community control violations.

{¶ 39} Byas did not receive advanced notice that he would be facing a hearing on the alleged community control violations. During oral arguments, the state conceded that Byas was not given adequate notice prior to the December 3, 2019 hearing regarding the alleged community control violations. The trial court's

coercion — accept the trial court's plea in the new case or be sentenced to prison that day on the unrelated violations — left Byas without a meaningful opportunity to enter a knowing, intelligent, and voluntary plea in the new case.

{¶ 40} Byas could have believed that he would not have received a fair probation violation hearing or a fair sentence on the violations if he did not accept the trial court's plea in the new case. Although the trial court suggested that it still had to make a determination regarding whether there was probable cause that Byas violated probation, the judge's comments during plea discussions clearly conveyed that the judge had already determined that Byas violated probation. The coercion was compounded by the trial court's assertion that "picking up the new case while on probation to the Court is a, per se, probation violation," and that "[e]ven if somehow [Byas was found not guilty] on the new case, [he still is] a probation violater on the other four cases." (Tr. 5.) This statement is not accurate as a matter of law.

> Courts have repeatedly determined that merely being charged with a crime is not sufficient to establish a probation violation. *See, e.g., Toledo v. Nova*, 6th Dist. Lucas No. L-12-1229, 2013-Ohio-1094; *State v. Wagner*, 179 Ohio App.3d 165, 2008-Ohio-5765, 900 N.E.2d 1089, ¶ 42 (2d Dist.) (stating that the fact that a criminal charge was filed, by itself, is not sufficient to prove that the defendant committed the criminal act); *State v. Craig*, 130 Ohio App.3d 639, 642, 720 N.E.2d 966 (1st Dist.1998) (stating that the mere fact of an arrest cannot constitute a violation of community control sanctions); *State v. Kidwell*, 10th Dist. Franklin No. 94APA06-883, 1995 Ohio App. LEXIS 564 (Feb. 16, 1995) (revocation of probation predicated solely upon arrest, without additional evidence, is reversible error); *State v. Moine*, 72 Ohio App.3d 584, 589, 595 N.E.2d 524 (9th Dist.1991) (stating that an arrest does not constitute a violation of probation). Rather, the violation must be based on some inquiry into the facts supporting the

charge, or some examination into the evidence underlying the offender's arrest. *Toledo* at ¶ 7, citing *Craig* at 642.

*State v. Washington*, 8th Dist. Cuyahoga Nos. 101157 and 101170, 2015-Ohio-305, ¶ 36.

{¶ 41} The trial court advised Byas, "[y]ou either are going to resolve this case [CR-19-639419] today with two years, or you're going to be, *in two minutes*, a probation violator, and you're going to be sent down for three years on the first probation violation." (Emphasis added.) (Tr. 8.) This statement, made during plea discussions in the new case, and before there was any factual inquiry into the new charges or any evidence on the new charges was presented, indicated that the trial court had already made up its mind regarding the probation violation. Accordingly, any hearing on the alleged probation violations would be perfunctory at best. *See State v. Bailey*, 8th Dist. Cuyahoga No. 103114, 2016-Ohio-494, ¶ 9, citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and *State v. Miller*, 42 Ohio St.2d 102, 326 N.E.2d 259 (1975), syllabus (because a trial court's judgment revoking community control can result in a serious loss of liberty, a defendant-probationer "must be accorded due process at the revocation hearing"); *State v. Cox*, 8th Dist. Cuyahoga No. 105932, 2018-Ohio-748, ¶ 15, citing *State v. Roberts*, 2017-Ohio-481, 84 N.E.3d 339, ¶ 18 (2d Dist.), and *Gagnon* (a defendant is entitled to a preliminary hearing to determine whether probable cause exists to believe that he or she violated probation, and due process requires a subsequent revocation hearing to determine whether probation should, in fact, be revoked);

*State v. Davis*, 8th Dist. Cuyahoga No. 93959, 2010-Ohio-5126, ¶ 26, citing *Gagnon* at 786 ("[*Gagnon*] required the trial court to provide [the defendant]: 1) written notice of the claimed violations; 2) disclosure of evidence against him [or her]; 3) opportunity to be heard and to present witnesses and documentary evidence; 4) the right to confront and cross-examine adverse witnesses; 5) a 'neutral and detached' hearing body; and 6) a written statement by the factfinder of the evidence relied upon and reasons for revocation.").

{¶ 42} The trial court again advised Byas that "I, *right now*, could sentence you to six years in a state penal institution[.]" (Emphasis added.) (Tr. 9.) Although Byas had an opportunity to confer with counsel during plea discussions, it is questionable whether Byas had enough time to adequately consider the offer based on the trial court's statements about sending Byas to prison "in two minutes" and "right now." *See Heard*, 2017-Ohio-8310, 87 N.E.3d 245, at ¶ 20.

{¶ 43} Based on the trial court's statements during plea discussions, Byas could have believed that he would not have received a fair trial or a fair sentence after trial in the new case. The trial court advised Byas, before any evidence was presented on the charges in the new case, that "[*e*]*ven if somehow you get a not guilty on the new case*, you still are a probation violater on the other four cases." (Tr. 5.) (Emphasis added.) The trial court's statement implied that it was unlikely that Byas would be found not guilty at trial on the new case.

{¶ 44} The trial court stated that if Byas was found to be in violation of probation and also convicted in the new case, the sentences would be run

consecutively: "[W]hat you're going to get is a consecutive period of incarceration if you're probation violated, and then eventually convicted of the new case; okay?" (Tr. 9.) The trial court's statements indicate that the judge had predetermined the imposition of consecutive sentences without considering the consecutive-sentence findings set forth in R.C. 2929.14(C)(4).

{¶ 45} For all of the foregoing reasons, we find that Byas's plea was not made voluntarily. *See Heard*, 2017-Ohio-8310, 87 N.E.3d 245, at ¶ 23. Byas's plea is void and must be vacated.

{¶ 46} Byas's first assignment of error is sustained.

## 2. Effect of No Contest Plea

{¶ 47} In his second assignment of error, Byas argues that the trial court erred in accepting his no contest plea because the trial court failed to comply with Crim.R. 11(C)(2).

{¶ 48} Pursuant to Crim.R. 11(C)(2), a trial court shall not accept a guilty or no contest plea in a felony case without first addressing the defendant personally and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *.

> (b) Informing the defendant of and determining that the defendant understands the effects of the plea * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require

the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 49} The purpose of Crim.R. 11(C) is to convey specific information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to enter a guilty or no contest plea. *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 5. This court reviews the issue of whether a trial court accepted a plea in conformance with Crim.R. 11(C) under a de novo standard of review. *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 22.

{¶ 50} "When a criminal defendant seeks to have his [or her] conviction reversed on appeal, the traditional rule is that he [or she] must establish that an error occurred in the trial-court proceedings and that he [or she] was prejudiced by that error." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 13. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). A defendant must establish prejudice "'on the face of the record'" and not solely by virtue of challenging the plea on appeal. *Id.* at ¶ 24, quoting *Hayward v. Summa Health Sys.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26.

{¶ 51} The traditional rule is subject to two limited exceptions. *Id.* at ¶ 14-16. Under these two exceptions, a defendant is not required to demonstrate prejudice (1) when a trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, and (2) when a trial court has completely failed to comply with a portion of Crim.R. 11(C). *Id.* at

¶ 14-15, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31; *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his [or her] plea vacated unless he [or she] demonstrates he [or she] was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Dangler* at ¶ 16, citing *Nero* at 108.

{¶ 52} This court no longer focuses on strict, substantial, or partial compliance when reviewing a trial court's compliance with Crim.R. 11. *State v. Kauffman*, 2021-Ohio-1584, 170 N.E.3d 952, ¶ 12 (8th Dist.). In *Dangler*, the Ohio Supreme Court recently recognized that prior caselaw had "muddled [the] analysis by suggesting different tiers of compliance with the rule" and "those formulations have served only to unduly complicate what should be a fairly straightforward inquiry." *Id.* at ¶ 17. *Dangler* identified the following three questions to be answered:

> (1) has the trial court complied with the relevant provision of the rule?
> (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.*

{¶ 53} In the instant matter, in challenging the validity of his plea, Byas contends that the trial court did not explain the effect of a no contest plea, as required by Crim.R. 11(C)(2), and as a result, completely failed to comply with Crim.R. 11(C)(2).

{¶ 54} Crim.R. 11(B)(2) governs the specific instruction that a trial court must provide a defendant when informing the defendant of the effect of a no contest plea. *E. Cleveland v. Brown*, 8th Dist. Cuyahoga No. 97878, 2012-Ohio-4722, ¶ 9. Crim.R. 11(B)(2) provides, "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding[s]." Accordingly, before accepting Byas's no contest plea, the trial court was required to advise Byas — either orally or in writing — of the effect of his plea, as set forth in Crim.R. 11(B)(2). *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 23 ("[F]or a no contest plea, a defendant must be informed that the plea of no contest is not an admission of guilt but is an admission of the truth of the facts alleged in the complaint, and that the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.").

{¶ 55} In the instant matter, the trial court completely failed to comply with Crim.R. 11(C). The record reflects that the trial court gave no explanation whatsoever to Byas regarding the effect of his no contest plea. During plea discussions, Byas appeared to be under the impression that he would be pleading guilty, rather than no contest: "I plead guilty, your Honor." (Tr. 9.) The first time a plea of no contest was mentioned was during a discussion between the trial court and the prosecutor, during which the trial court confirmed that the case file had not been "marked." Although Byas previously expressed a desire to plead guilty, the trial

court told Byas to plead no contest when formally accepting Byas's plea on the record: "How do you plead? You're going to plead no contest. Remember that." (Tr. 22.) The trial court did not advise Byas of the effect of his no contest plea — either before or after instructing Byas to plead no contest.

{¶ 56} "Without any explanation of the effect of his no contest plea, [the defendant's] plea was not knowingly, voluntarily, and intelligently made." *Heard*, 2017-Ohio-8310, 87 N.E.3d 245, at ¶ 31. In this case, like *Heard*, the record reflects that the trial court failed to provide any explanation of the effect of Byas's no contest plea. Furthermore, Byas appeared to be confused as to whether he was pleading guilty or no contest, and Byas only pled no contest after the trial court instructed him to do so when Byas was formally tendering his plea. (Tr. 22.) Because the trial court completely failed to comply with Crim.R. 11(C), Byas was not required to demonstrate that he was prejudiced by the trial court's error. *Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, at ¶ 15; *State v. Reyes*, 8th Dist. Cuyahoga No. 110126, 2021-Ohio-3599, ¶ 16.

{¶ 57} For all of the foregoing reasons, Byas's second assignment of error is sustained. Because the trial court failed to provide any explanation to Byas regarding the effect of his no contest plea, the trial court completely failed to comply with Crim.R. 11(C). Without an explanation of the effect of his no contest plea, Byas's plea was not knowingly, voluntarily, and intelligently made. As a result, Byas's plea must be vacated.

{¶ 58} Byas's second assignment of error is sustained.

## III. Conclusion

{¶ 59} After thoroughly reviewing the record, we find that Byas's no contest plea was not knowingly, voluntarily, and intelligently made. Accordingly, Byas's no contest plea must be vacated.

{¶ 60} This cause is vacated and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
LISA B. FORBES, J., CONCUR