[Cite as *State v. Griffon*, 2024-Ohio-5212.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                              :

    Plaintiff-Appellee,            :

                                     No. 113608

    v.                                        :

JARYL GRIFFON,                           :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED, AND REMANDED
**RELEASED AND JOURNALIZED:** October 31, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-683279-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Mason McCarthy, Assistant Prosecuting
Attorney, *for appellee*.

Patituce & Associates, LLC, Joseph C. Patituce, and
Erin M. Branham, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Jaryl Griffon appeals from the trial court's revocation of his community-control sentence and the subsequent imposition of an aggregate one-year term of imprisonment. For the following reasons, we reverse the decision of

the trial court, vacate the imposed sentencing order, and remand for further proceedings.

{¶ 2} Griffon was originally sentenced to a two-year term of community-control sanctions on his guilty plea to breaking and entering and criminal damaging. The parties have not presented the underlying facts of those convictions, but those are unnecessary to the resolution of this appeal. It appears that Griffon in a separate proceeding also had civil protection orders issued against him in favor of two residents of the condominium complex where he lived. Those protection orders are not included in the trial court's record but were vaguely discussed by the court and the parties during the underlying community-control-violation proceedings. Evidently, as part of the orders of protection, Griffon was not to "interfere with the telecommunication devices" in the building in which he resided. Griffon disagrees as to the scope of the protection orders.

{¶ 3} Less than a week after being sentenced to the community-control sanctions, Griffon met with his probation officer, Plamedie Katusevanako, for the first time. Griffon submitted to drug testing at that first meeting, which eventually came back positive for amphetamines. There is no information in the record regarding the positive test other than the fact that some kind of test indicated that Griffon had ingested amphetamines at some point previous to the testing. In light of the timing of the drug test, being within days of the community-control sanctions

being imposed, that test is rather unremarkable.[1]  Accordingly, Katusevanako provided Griffon a verbal warning as per their standard procedures and then advised Griffon that testing positive for amphetamines in the future would be a violation of his community-control sanctions.  The record demonstrates that Katusevanako took no further action with respect to the positive test result at that time, and there is no record of Griffon testing positive thereafter.

{¶ 4}  Shortly after their first meeting, Katusevanako received electronic communications from someone she was led to believe was the subject of the protection orders entered against Griffon.  According to the email, Griffon was not supposed to interfere with any telecommunications device pursuant to the orders of protection, but he did so on several occasions by placing an object in front of a Wi-Fi camera located in the entryway of the condominium building in which Griffon lived.  That Wi-Fi camera was placed directly on the heater in the entryway, which formed a shelf of sorts — although placing an electronic device on a heater does not seem the most sensible of practices.  It is unclear why a personal camera was placed in the common area of the entryway, which is not near any personal residence.  Katusevanako could not verify whether the person contacting her owned the camera or was a petitioner in the civil protection orders.  The videos depicted Griffon

---

[1] According to Griffon, in testifying at the violation hearing, he was not aware that ingesting amphetamines would result in a community-control violation.  Amphetamines in general are prescription drugs that are used for legitimate medical treatment but can be subject to abuse.  *See Gonzales v. Raich*, 545 U.S. 1, 64 (2005) (O'Connor, J., dissenting).  This is contrasted with methamphetamines, which although chemically similar, are illicit street drugs with no valid medical usage.

temporarily placing an object he was carrying, a bag or large piece of cardboard, on or against the heater as he attended to other matters before exiting the entryway. The object temporarily and partially obscured the camera's field of vision. Katusevanako indicated that she was told that act violated the protection orders because it constituted "interfering with a telecommunications device." It has not gone unnoticed that according to that logic, merely standing or walking near enough to the camera to obscure the field of view would nonsensically constitute a violation of the protection orders. Nonetheless, Katusevanako never independently verified the complaining party's assertion and was limited to testifying that it was her "understanding" that there were protection orders in place that included that prohibition. Tr. 51:15-18.

{¶ 5} Nothing in the record demonstrates that the condition of the protection orders to refrain from interfering with a telecommunications device owned by one of the victims was incorporated into the general terms of the imposed sanctions. Although the trial court, a judge not assigned to the case, mentioned the protection orders at the sentencing hearing, it did not incorporate the terms of the protection orders into the community-control sanctions to be enforced through supervision. The sentencing judge issued no-contact orders against two victims, who are believed to be the petitioners who obtained the separate civil protection orders, but the State failed to present any evidence confirming the identities of the victims or explaining how temporarily placing an object on a heater in front of the

camera constituted "contact" with those victims for the purposes of the no-contact orders.

{¶ 6} Further of concern, the docket does not reflect any notice being provided to Griffon of the revocation proceedings conducted, this time by the judge assigned to the case. Instead, on January 23, 2024, the trial court conducted a hearing that combined a perfunctory probable-cause hearing with the revocation hearing. Griffon did not waive the probable-cause hearing. Instead of introducing evidence upon which the court could render a decision as to whether there was probable cause to proceed, the trial court recited its version of a summary of anticipated testimony. The court, without providing any opportunity to Griffon to contest the probable-cause determination, concluded that probable cause existed to proceed to the revocation hearing.

{¶ 7} The revocation hearing was immediately conducted. Katusevanako then provided testimony establishing the same information the trial court had already used to determine there was probable cause to believe a violation occurred.

{¶ 8} Griffon testified in his defense, claiming that there was no violation of the community-control sanctions because he was not aware that using amphetamines would violate the terms of his community-control sanctions until after he tested positive. He further argued that he did not interfere with the camera, but that the camera was sitting on the heater in the hallway that he used to temporarily place the items he was carrying to free his hands. In one of the videos

submitted for the trial court's review, Griffon can be seen placing a bag on the shelf so that he could fix the leash on one of his dogs before exiting the building.

{¶ 9} The trial court determined that Griffon violated the terms of his community control by temporarily placing objects in front of a camera that supposedly belonged to someone in the condominium. The trial court also concluded that Griffon's positive drug test obtained at his first meeting with Katusevanako was a secondary, independent violation, although the evidence of the positive drug test was not accompanied with any context as to when the drugs were allegedly consumed, how the tests were conducted, or whether Griffon had a valid prescription for amphetamines. Griffon was immediately sentenced to "his original sentence," which was "ordered into execution," of a one-year term of imprisonment for each count.

{¶ 10} Upon pronouncing the sentence, Griffon asked the court to stay execution of sentence until he could arrange for his two dogs to be cared for in his absence. The trial court declined the request and immediately remanded him to custody. This timely appeal followed. After the trial court denied Griffon's request for an appellate bond, this court granted the request under the original terms of Griffon's trial bond.

{¶ 11} Griffon presents three assignments of error claiming (1) that the trial court violated his due process rights by failing to provide written notice of the alleged violations, disregarding his right to present a defense and confront witnesses, and not providing adequate time to prepare a defense to the allegations; (2) that the trial

court abused its discretion in finding that a violation existed; and (3) that the court erred by imposing the maximum sentence for a first-time probation violator. The second assignment of error is dispositive. The remaining are, therefore, moot.

{¶ 12} "'A trial court's decision finding a violation of community control will not be disturbed on appeal absent an abuse of discretion.'" *State v. Fountain*, 2023-Ohio-3111, ¶ 10 (3d Dist.), quoting *State v. Ryan*, 2007-Ohio-4743, ¶ 7 (3d Dist.), and *State v. Griffin*, 2016-Ohio-937, ¶ 12 (8th Dist.). "Because a trial court's revocation of community control can result in a serious loss of liberty, 'a probationer must be accorded due process at the revocation hearing.'" *State v. Ray*, 2020-Ohio-5004, ¶ 14 (8th Dist.), quoting *State v. Bailey*, 2016-Ohio-494, ¶ 9 (8th Dist.), citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973). Further, a probationer is "entitled to a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his or her community control." *Id.*, citing *State v. Cox*, 2018-Ohio-748, ¶ 15 (8th Dist.); *see also State v. Mullins*, 2012-Ohio-5005, ¶ 10 (12th Dist.); *State v. Theisen*, 2023-Ohio-2412, ¶ 20 (4th Dist.).

{¶ 13} In this case, the trial court opened the hearing, after acknowledging that Griffon was not waiving the preliminary hearing, by stating the following:

> Counsel has previously waived the merit part, but the Court's going to revisit it after consulting with counsel at the sidebar. And the Court's going to indicate for the record what the merits of the probation violation would be, the reason that it was set.
>
> And the Court's information is that he was sentenced to two years of community control on regular supervision. On November 17 of 2023 the probation officer received a call regarding the defendant's violation of the court protection order to not interfere with telecommunications

in the building where he resides. Three days later the defendant reported to the probation department and was instructed on the rules and conditions of his probation. The defendant also admitted to drug testing and was positive for amphetamines. The defendant was given a verbal warning per the behavior and response program.

On December 16 the probation officer received eight videos documenting the defendant intentionally placing items in front of the camera placed in the building where he resides. Police reports have also been filed regarding this issue, and the videos are dated as follows: November 30, 2023; December 3, 2023; December 4 of 2023; December 6 of 2023; December 7 of 2023; and December 8 of 2023.

The Court then does find that probable cause does exist for the probation officer to issue a request for a violation.

. . .

We'll set it for a hearing, but it's my understanding that there is documentation — you want the probation officer to come up today?

Tr. 40:1-41:17. After the perfunctory conclusion as to the probable-cause determination, the trial court proceeded to take evidence from Katusevanako, who largely repeated what the court just said. The trial court then found Griffon to have violated the terms of his community-control sanctions.

{¶ 14} Griffon argues the terms of the civil protection orders were not incorporated into the terms of his supervision and, even if they were, the State failed to introduce the protection orders into evidence at the hearing to establish a violation of the protection orders themselves. The State failed to address this argument in this appeal. *But see* App.R. 16(A)(7). And in addition, the trial court failed to comply with R.C. 2929.13(E)(2), which precludes a violation of community-

control sanctions being solely based on one positive drug test unless the trial court renders one of two possible findings on the record.

{¶ 15} The trial court concluded that Griffon violated the terms of his community-control sanctions by interfering with any telecommunications through his placing items in front of a Wi-Fi camera located on the heater in the entryway of the condominium building and through testing positive for amphetamines on his initial meeting with Katusevanako. From the discussion that occurred at the hearing, the prohibition from interfering with a telecommunications device originated in separately issued civil protection orders, but there is no record of that condition being incorporated into the general supervision terms, nor is there any record of Griffon being convicted for violating the protection orders. Further, the evidence on this point was extremely limited. When discussing the matter, Katusevanako merely stated that "it appears that [Griffon] was not supposed to interfere with any communications in the building . . . [but she was] not sure what this case is about." Tr. 46:3-16. She was also unsure who owned the camera. Tr. 55:12-13. It does not appear that Katusevanako was even aware of the express terms of the protection orders, which were never introduced into the record for the trial court's consideration. When asked about the protection orders, Katusevanako provided no details other than her "understanding that there is a protection order in place that [Griffon] is not supposed to interfere with any telecommunications in the building[.]" Tr. 51:15-19. There is no evidence of who the petitioners are for the protection orders, much less any evidence of who owns the camera.

{¶ 16} As a result, there are two issues with the State's evidence of a violation. Katusevanako never testified to specifically notifying Griffon that a violation of the protection orders would constitute a direct violation of his community-control sanctions, nor were the terms of the protection orders incorporated into the sanctions imposed by the trial court. At sentencing, the trial court, who was not assigned to the case, only imposed no-contact orders "with Mr. Geissinger or Ms. Suero" and stated that Griffon was subject to general supervision according to the "rules and regulations of the probation department." Although Katusevanako also told the court that several police reports were filed with respect to the alleged interference with a telecommunications device, those police reports in and of themselves are not evidence of a violation having occurred. *State v. Byas*, 2021-Ohio-3924, ¶ 40 (8th Dist.), citing *State v. Washington*, 2015-Ohio-305, ¶ 36 (8th Dist.) ("Courts have repeatedly determined that merely being charged with a crime is not sufficient to establish a probation violation.").

{¶ 17} And second, the State failed to introduce the terms of the protection orders into the record for the trial court's review to determine whether the protection orders were arguably violated for the purposes of determining whether Griffon committed a crime while under supervision. The State's only witness had no direct knowledge of the protection orders; she merely related what she was told by one of the victims. Importantly, and as already mentioned, the State has not addressed this issue. *See* App.R. 16(A)(7). Because the record does not demonstrate that the terms of the protection orders were specifically incorporated into the terms

of the community-control sanctions and the protection orders were not introduced by the State as evidence of criminal conduct, those incidents cannot form the basis of a community-control violation.

{¶ 18} We understand the trial court's concerns regarding Griffon's interference with telecommunication devices within his condominium building; however, that concern does not relieve the State from its burden to produce evidence demonstrating that such a condition violated the terms of the protection orders or was expressly incorporated into the terms of the community-control sanctions. Further, the protection orders only extend to the petitioners and, without evidence of who owned the camera, the State was unable to prove any violation.

{¶ 19} With respect to the State's appellate argument that Griffon's testing positive for amphetamines constituted a secondary, independent violation, the State failed to present sufficient evidence demonstrating the existence of a violation. According to Katusevanako, the positive test result merely resulted in a warning being issued to Griffon to refrain from further use of any amphetamines. After issuing the warning, the State cannot hold that positive test result over Griffon like the mythical sword of Damocles, threatening to issue a violation at any point during the remaining duration of the community-control sentence. The positive test result is either a violation or it is not, based on the supervising officer's conclusion. In this case, Katusevanako initially determined that a warning was sufficient "per the behavior and response program." Tr. 47:11-12. In light of the fact that a warning

was issued, the State cannot rely on the test result alone as a basis to deem a violation to have occurred.

{¶ 20} This conclusion is consistent with R.C. 2929.13(E)(2), which provides that a sentence for a violation of community-control sanctions cannot be solely based on one positive drug-test result unless the trial court finds on the record that the offender continues to use drugs after drug treatment or that prison is necessary according to R.C. 2929.11. The trial court made no such findings during the revocation hearing. Even if the positive test result was for an illicit or illegally obtained substance, the trial court failed to comply with R.C. 2929.13(E)(2). The positive drug test is not an independent basis to determine that a violation of the community-control sanctions occurred. And because the positive drug test was the only other alleged violation, it is inextricably tied to the alleged violation of the protection orders. Without a second violation, the drug test alone cannot form the basis of affirming the sentence imposed. *See State v. Lopez*, 2015-Ohio-5269 (8th Dist.) (testing positive for alcohol use was not the sole alleged violation and therefore R.C. 2929.13(E)(2) was not implicated); *State v. Lofton*, 2008-Ohio-3015, ¶ 20 (8th Dist.).

{¶ 21} Based on the foregoing, the trial court abused its discretion in finding that a violation of the community-control sanctions occurred. Neither of the cited conduct demonstrated a violation of the terms of the community-control sanctions as originally imposed. The decision of the trial court is reversed, and the order

imposing the sentence for the violation is hereby vacated. This matter is remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY